26-1088

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

Jetaime Flores,

Plaintiff/Appellant,

v.

Cook County,

Defendant/Appellee.

On Appeal from a decision of the
United States District Court for the Northern District of Illinois
Case No. 23 CV 16260
Hon. April M. Perry

Brief and Required Short Appendix of Plaintiff-Appellant

Jonathan Lubin
8800 Bronx Ave.
Suite 100H
Skokie, IL 60077
773 954 2608
jonathan@lubinlegal.com

Save As Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1088

Short Caption: Jetaime FLores v. Cook County

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Jetaime Flores

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: s/Jonathan Lubin Date: March 11, 2026

Attorney's Printed Name: Jonathan Lubin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 8800 Bronx Ave., Suite 100H, Skokie, IL 60077

Phone Number: 7739542608 Fax Number:

E-Mail Address: jonathan@lubinlegal.com

## Table of Contents


**I. Statement of Jurisdiction** ........ 1

**II. Statement of the Issues** ........ 1

**III. Statement of the Case** ........ 1

**IV. Summary of the Argument** ........ 7

**V. Argument** ........ 8

**A.** Standard of Review. ........ 8

**B.** Summary Judgment Standard ........ 9

**C.** A genuine issue of fact existed regarding whether there was a reasonable accommodation that would have allowed Plaintiff to continue working. ........ 9

*i. The observance here was religious in nature, and based upon a sincerely held religious belief.* ........ 10

*ii. The County failed to accommodate Plaintiff.* ........ 12

**D. The District Court erred in granting Summary Judgment on Plaintiff's disparate impact claim.** ........ 17

**E. Conclusion** ........ 18


## Table of Authorities

### Cases


Adeyeye v. Heartland Sweeteners, LLC, 721 F.3d 444 (7th Cir., 2013) ........ 10, 11, 13, 17

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) ........ 9

Foley v. City of Lafayette, 359 F.3d 925, 928 (7th Cir. 2004) ........ 9

Groff v. DeJoy, 600 U.S. 447 (2023) ........ 13, 14, 17

Gross v. PPG Indus., Inc., 636 F.3d 884 (7th Cir., 2011) ........ 9

Kaufman v. McCaughtry, 419 F.3d 678 (7th Cir. 2005) ........ 10

Kluge v. Brownsburg Cmty. Sch. Corp., 64 F. 4th 861 (7th Cir. 2023) ........ 10, 12, 17

Passarella v. Aspirus, Inc., 108 F.4th 1005 (7th Cir., 2024) ........ 11

Porter v. City of Chicago, 700 F.3d 944 (7th Cir., 2012) ........ 18

Snyder v. Chicago Transit Authority, 22 CV 6086 (Nov. 6, 2023) ........ 11

Thomas v. Review Board of the Indiana Emp. Sec. Div., 450 U.S. 707, 715 (1981) ........ 10, 11

**Statutes**

42 U.S.C. § 2000e(j) ....................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 56.........................................................................................................9

**Rules**

Fed. R. Civ. P. 56(c) ....................................................................................................9

## I. Statement of Jurisdiction

The basis of federal jurisdiction over the underlying Complaint was subject matter jurisdiction was 28 U.S.C. § 1331 because the Complaint sought relief under 42 U.S.C. § 2000e, *et seq*. Docket #9. On December 19, 2025, Hon. April M. Perry decided summary judgment in favor of Defendant and against Plaintiff, terminating the matter. Docket #56. A timely Notice of Appeal was filed on January 18, 2026. Docket #58.

## II. Statement of the Issues

The issue before this Court of Appeals is whether the District Court erred in granting summary judgment for Defendants in Plaintiff's Title VII reasonable accommodation claim where

a. Plaintiff claimed that a request for a reasonable accommodation, allowing her to continue working as a pharmacist without the COVID-19 vaccination, was not granted;

b. where the employer, Cook County Health, allowed a similarly situated employee to continue working despite not vaccinating;

c. and where Plaintiff had been working without vaccination throughout the rest of the COVID-19 pandemic before that point.

## III. Statement of the Case

Plaintiff's Complaint alleges that she was employed by Cook County as an Outpatient Pharmacy Technician. Docket #9, at ¶ 11. Prior to the institution of the County's vaccine mandate, Plaintiff, Jetaime Flores, had worked for the County,

and taken steps to mitigate her exposure to COVID-19, and to avoid exposing others to COVID-19. Docket #9 at ¶ 7. These precautions included using PPE (personal protection equipment), including masks, forbidding eating within the workplace, and other steps. Docket #9, at ¶ 8. In the early fall of 2021, the County instituted what became known as a hard mandate. This means that vaccination was obligatory unless an employee received an exemption on a religious or other basis. Docket #9, at ¶ 9. Plaintiff requested such an accommodation on September 19, 2021. Docket #9, at ¶ 12. It objected to the use of aborted fetal cell lines in vaccine production, and it stated that she had conferred with the Lord through prayer and therefore believed she should respect the body that G-d gave her. Docket #14, at ¶ 12.

On September 16, 2021, the County initially denied the request for an accommodation on the basis that Plaintiff had previously vaccinated against flu. Docket #9, at ¶ 13. It then changed its determination, "granting" the accommodation in name, while forbidding Plaintiff from working until she either found a remote position to which she could apply, or she vaccinated against COVID-19. Docket #9, at ¶ 14. That period of accommodation lasted 90 days. Docket #9, at ¶ 15. However, there were no such remote positions. Docket #9, at ¶ 16. Meanwhile, the County accommodated a different employee who did not vaccinate, and who sought to be accommodated on a non-religious basis. Docket #9, at ¶ 17.

After the accommodation period ended, Plaintiff was formally terminated due to her vaccination status. Docket #9, at ¶ 19.

On July 14, 2025, Defendant filed a Motion for Summary Judgment. Docket #50. That Motion's Memorandum cited the certain passages out of Plaintiff's deposition testimony that suggested other concerns she had with the vaccine, including concerns she has with medication in general. Docket #51, at p. 3-4. It also noted that Plaintiff's religion, Evangelical Christianity, does not prohibit vaccination. But ultimately, she testified that the basis for her refusal to take the COVID-19 vaccination was concern for the use of aborted fetal tissue in the production of the vaccines, though she admitted that she does not know whether other medications she takes also use fetal tissue lines. Rather, she "consults the Lord" and with elders at her church before taking any medication. Docket #51, at p. 3-4

The Motion noted that while Cook County Health employed approximately 5900 employees, 102 sought religious accommodations. The determination about whether to grant an accommodation was based entirely on whether the employee could work remotely. This was nine people in total. Plaintiff was not among them due to her position. She was therefore given 90 days to find a remote position to which she could apply (like any other applicant). Docket #51, at p. 4-5

The Motion anticipated that the Response would point to a single employee, a Sanitarian I, who was accommodated on a secular basis. That employee – according to the Motion - was not "accommodated" because that employee never submitted a request for an accommodation. She was simply allowed to work. The Motion claims that the employee was only discovered by HR in mid-2022. It was later determined

that this employee was not vaccinated because she was participating in a double-blind study of vaccine efficacy. She later submitted proof of having COVID-19 antibodies (which means she had had COVID-19). Docket #51, at p. 5.

The argument practically disputed every element of a Title VII claim. It claimed that Plaintiff's request was not sufficiently religious, and that it would have been an undue hardship to exempt Plaintiff from the policy.

The Response to Summary Judgment was filed on August 18, 2025. Docket #53. Hon. April M. Perry's Standing Order requires the parties to present a joint statement of fact, so all of the facts Plaintiff relied upon are contained in the initial Statement of Facts found at Docket #52. It presented the following facts: Prior to the vaccine mandate, protective measures had been instituted across Cook County Health that involved wearing masks (and wearing N95 masks when providing direct care to patients), requiring employees with any COVID-19 symptoms to stay home, limiting the number of people in a given space, and discouraging staff from eating in groups or in public. Docket #52 at ¶ 13 (and Answer, admitting). Plaintiff was employed as a Pharmacist in the Outpatient Pharmacy at Stroger Hospital. Docket #52 at ¶ 44. The Outpatient Pharmacy is within Stroger Hospital. It is a single workspace, with 30-40 pharmacists and technicians on each shift. Docket #52 at ¶ 46. Plaintiff's role involved receiving and handing out prescriptions through a window, answering patient inquiries, interacting face to face with supervisors and personnel, and with patients through a glass partition, and delivering medications

to nurses, including on a dedicated COVID floor at Stroger Hospital. Docket #52 at ¶¶ 47-49.

After being suspended without pay in September, 2021 (the County calls this an "unpaid leave"), Plaintiff was ultimately terminated on May 18, 2022 for "Gross Insubordination," "Negligent Performance/Willful misconduct" for failing to comply with the vaccination policy. Docket #52 at ¶¶ 70, 75.

There was, however, an employee who worked for Cook County Health, who did not get vaccinated, worked on-site, and was neither suspended nor terminated. That employee sought an accommodation for a secular purpose instead of a religious purpose. On October 2, 2021, that employee, the Sanitarian I, sent an email to several figures within Cook County Health to apprise them that she was taking part in a double-blind study of the efficacy of a new COVID-19 vaccine. Docket #52 at ¶ 78. Cook County's Senior Public Health Medical Officer, Rachel Rubin, responded to this Sanitarian I, stating that she should "ask for an exemption" and would need to take a weekly COVID test, given that she did not know whether she was given the placebo or the vaccine, and given that the vaccine was still in the testing phase. Docket #52 at ¶79. That employee was never terminated or disciplined. Rather, as late as July 8, 2022, Anitha Nimmagadda e-mailed the Sanitarian I to state that she was not in compliance with the COVID-19 vaccination policy, particularly given that she had had the option to ask for the study to be unblinded. She was then asked to submit a record of whether she was vaccinated or not by August 1, 2022. Docket #52 at ¶ 85. The employee did not comply. Rather,

she emailed on July 29, 2022, and informed Nimmagada that she had emailed to ask for the study to be unblinded, and that she would find out "in August." Docket #52 at ¶ 86. On September 27, 2022, she updated again to state that she would find out whether she was vaccinated in October," now months after the arbitrarily set August deadline. Docket #52 at ¶ 87. On October 12, 2022, she updated again to state that she had been given the placebo, and that she had just received the first batch of one of the approved vaccines. Docket #52 at ¶ 88. This was now more than a year after Plaintiff had been removed from the payroll.

The employee likely had caught COVID-19 during that period, as she emailed a human resources officer on June 7, 2022 to disclose that she had tested positive for COVID-19 antibodies. Docket #52 at ¶ 82. Howland noted in an email that forwarded that one that this employee was free to take an approved vaccine at any time during the study, and that she needed to have submitted a request for an exemption "though I can't imagine how they would have been able to honor that anyway, given the fact that she was voluntarily participating in the blind study." Docket #52 at ¶ 83. Still, she was never terminated or disciplined.

The County's response to all of this (in anticipation, as the County offered it in its opening memo), argued that this employee worked for the Cook County Department of Public Health, which is not inside Stroger Hospital, but rather is located in the suburbs, Docket #52 at ¶ 77. While the County argued that this made her position materially different from Plaintiff's, it provided no information about

what this Sanitation I employee actually does. See Docket #52 at #77, which is all of the information the County provided.

The Court granted summary judgment on December 19, 2025. The Court found that Plaintiff had articulated a religious basis for her request for an accommodation as it was "at least in part" based upon religion. However, the Court ruled that Defendant had demonstrated that a reasonable accommodation would be an undue hardship. It therefore granted Summary Judgment to Defendant. Docket #56. This appeal followed.

## IV. Summary of the Argument

It was reversible error for the District Court to grant summary judgment. In determining whether summary judgment should be granted in a matter having to do with a reasonable accommodation for a religious belief or practice, Courts use a burden-shifting framework. First the Plaintiff must demonstrate a *prima facie* case. Specifically, Plaintiff must demonstrate (1) an observance or practice that is religious in nature, and (2) that is based on a sincerely held religious belief, (3) conflicted with an employment requirement, and (4) the religious observance or practice was the basis or a motivating factor for the employee's discharge or other discriminatory treatment.

Once Plaintiff has demonstrated the *prima facie* case, Defendant then has the burden to demonstrate that any reasonable accommodation would have resulted in undue hardship.

Here, Plaintiff demonstrated all of the elements of her *prima facie* case. She demonstrated that she had a sincere religious belief that prevented her from vaccinating. That belief was that the body is a temple, and that it would violate the sanctity of that temple to inject the COVID-19 vaccine. This specific religious belief has been identified in case law as being religious in nature, thus satisfying the first three prongs of the analysis. Since Plaintiff was terminated for her refusal to vaccinate, Plaintiff also satisfied the fourth and final prong.

The burden therefore shifted to Defendant to demonstrate that any reasonable accommodation would prove to be an undue hardship. The accommodation would have been to allow Plaintiff to continue to do her job, as she had been doing throughout the pandemic. It would not have involved any changes whatsoever to her workplace responsibilities or to the costs of employing her. Defendant's claim, in response, was that it was unable to accommodate Plaintiff because its policy was inflexible. However, that is patently untrue as Defendant did accommodate another employee who worked on-site without vaccination. Since Defendant offered almost no information about that employee's work conditions or responsibilities, it failed to sustain its burden.

For similar reasons, the Court also erred in granting summary judgment under a disparate impact treatment theory.

## V. Argument

### A. Standard of Review.

An appellate court review's a district court's decision to dispose of a case on summary judgment *de novo*. Gross v. PPG Indus., Inc., 636 F.3d 884, 888 (7th Cir., 2011).

**B.** Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." Foley v. City of Lafayette, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

**C.** A genuine issue of fact existed regarding whether there was a reasonable accommodation that would have allowed Plaintiff to continue working.

The Motion for Summary Judgment did not cede an inch of ground, and contested nearly every aspect of the prima facie case. The Court's grant of Summary Judgment was based upon the finding that there was no reasonable accommodation. However, given the *de novo* nature of this appeal, it makes sense to address all of the elements. To prevail on a failure to accommodate claim, an

employee must demonstrate: (1) an observance or practice that is religious in nature, and (2) that is based on a sincerely held religious belief, (3) conflicted with an employment requirement, and (4) the religious observance or practice was the basis or a motivating factor for the employee's discharge or other discriminatory treatment." Kluge v. Brownsburg Cmty. Sch. Corp., 64 F. 4th 861, 883 (7th Cir. 2023). If the employee shows these elements, the burden shifts to the employer to show that it could not accommodate the employee's religious belief or practice without causing the employer undue hardship. *Id.*, citing Adeyeye, 721 F.3d at 449.

*i. The observance here was religious in nature, and based upon a sincerely held religious belief.*

Title VII defines "religion" as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). On that score, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others" to be entitled to protection. Thomas v. Rev. Bd. Of Ind. Emp. Sec. Div., 450 U.S. 707, 714 (1981), cited with respect to Title VII in E.E.O.C. v. Union Independiente de la Autoridad de Aceuductos y Alcantarillados de P.R., 279 F.3d 49, 56 (1st. Cir., 2002). A belief is religious if it is both "religious in the person's own scheme of things and is sincerely held." Adeyeye v. Heartland Sweeteners, LLC, 721 F.3d 444, 448 (7th Cir., 2013). A belief is religious in a person's own scheme of things if it "occup[ies] a place parallel to that filled by God in traditionally religious persons." Kaufman v. McCaughtry, 419 F.3d 678, 681-82 (7th Cir. 2005). Such beliefs "deal[ ] with issues of ultimate concern," such as "matters of the afterlife, spirituality, or the soul,

among other possibilities. Snyder v. Chicago Transit Authority, 22 CV 6086 (Nov. 6, 2023), citing Adeyeye, 721 F.3d at 448.

This Court recently confirmed these fundamental concepts:

> Applying the statutory language [of Title VII] necessarily requires an exercise of judgment: the standard is not amenable to formulaic resolution like solving a math equation. To the contrary, its application requires a holistic assessment of the terms of the employee's exemption request, with the controlling inquiry at the pleading stage being whether the employee plausibly based her vaccination exemption request at least in part on an aspect of her religious belief or practice. Passarella v. Aspirus, Inc., 108 F.4th 1005, 1009 (7th Cir., 2024).

Inherent in that finding was the fact that "an employee may object to an employer's vaccine mandate on both religious and non-religious grounds." *Id.* "We would inevitably face the task of trying to draw lines between requests that are, for example, 'primarily' or 'mostly' or 'minimally' or 'tangentially'—pick your adverb—based on religion, with the latter categories ostensibly falling short of the Title VII threshold. Those kinds of distinctions would prove slippery in practice and arbitrary in their application." *Id.* at 1010. Such an approach also violates well-settled principles outlined by the Supreme Court. *Id.* "At every turn the Court's watchword has been caution." *Id.* "Perhaps above all else, then, one guidepost is clear: 'courts should not undertake to dissect religious beliefs ... because [they] are not articulated with the clarity and precision that a more sophisticated person might employ.'" *Id.* at 1011, citing Thomas v. Review Board of the Indiana Emp. Sec. Div., 450 U.S. 707, 715 (1981).

Plaintiff's request for an accommodation cited Plaintiff's belief in the sanctity of human life and the objection to fetal tissue being used in production, which is implicitly recognized as a religious belief in Passarella, *supra*.

That religious concern prevented Plaintiff from doing something that her employer required her to do as a component of her employment: vaccinate against COVID-19. The County also argued that it had no animus against Plaintiff on the basis of her religion, and that it therefore could not be liable (ie, Plaintiff's religion was not the "motivating factor" in the termination). This is a misunderstanding of the law. Rather, the requirement to provide a reasonable accommodation (if one exists) attaches if "the religious observance or practice was the basis or a motivating factor for the employee's discharge." Kluge, 64 F.4th at 883. That is to say, since the problem was that Plaintiff did not vaccinate as a result of her religion, Title VII was implicated. The burden therefore should have shifted to Defendant at this point.

*ii. The County failed to accommodate Plaintiff.*

The salient question, therefore, is whether there was a reasonable accommodation that the County failed to provide. This was the County's burden. The County certainly did not accommodate Plaintiff (despite its claims that it accommodated her by putting her on a 90-day unpaid leave, during which time she was free to hunt for nonexistent remote positions; this is not an accommodation). The Court found that there was no reasonable accommodation. This was error.

The employer "bears the burden of proof, so it must show, as a matter of law, that any and all accommodations would have imposed an undue hardship."

Adeyeye, 721 F.3d at 455. The Court in Adeyeye noted that context is important in that calculus. It found that summary judgment on the question of a reasonable accommodation was improper "based on the specific evidence in this case, which showed that during his tenure at [the employer], Adeyeye had two jobs at [the employer…] The evidence would permit a jury to find that [the employer] expects and plans for high turnover of workers in both job categories." *Id.* The question there had to do with whether a three-week leave of absence for religious reasons had to be accommodated. The Seventh Circuit found that it was a jury question. "The issue of undue hardship will depend on close attention to the specific circumstances of the job." *Id.*

To sustain that burden, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." Groff v. DeJoy, 600 U.S. 447, 470 (2023). Stated otherwise, undue hardship occurs when the proposed accommodation poses "a burden [that] is substantial in the overall context of an employer's business. *Id.* at 468. The accommodation that Plaintiff sought was to continue doing what she had been doing up until she was told she could no longer do it. Prior to the vaccine policy, she was masking while at work, and socially distancing in accordance with the County's requirements, like every other employee of Cook County Health. Indeed, she had been doing this vital work for months, at this point, under pandemic conditions. The accommodation of simply allowing her to continue doing what she was already doing could not have involved increased costs (and certainly

not substantially increased costs) because it was what Plaintiff was already doing to that point. It also could not possibly constitute "a burden that is substantial in the overall context" of the job, given that it was exactly what she had been doing until the moment she was forbidden from doing it.

Further, under Groff, "impacts on coworkers is 'off the table' for consideration" in the analysis of determining whether there is an undue burden. *Id.* at 472. The policy here was forced upon Plaintiff's coworkers as much as it was forced on Plaintiff. Defendant never once suggested that coworkers who were willing to work alongside an unvaccinated coworker on the day before the policy went into effect suddenly became rabidly opposed to doing so the day after. The County emphasizes the closed nature of the room where Plaintiff worked; but it was only the County's self-imposed inflexible rule that rendered Plaintiff's continued employment problematic. No evidence has suggested what, if anything, other employees thought about being "protected" from Plaintiff, their coworker.

In a kind of circular reasoning, the County claims that it was unable to accommodate Plaintiff because of its unforgiving rule: all employees who were not vaccinated against COVID-19 were only permitted to work on a fully-remote basis. That is to say, the reason that it was impossible to accommodate Plaintiff is because the rule specifically provided for no such flexibility. It is because it is. According to the County, this inflexibility included positions that did not involve direct patient care. It also applied, in the words of the County itself across its facilities. The

County's rule – as per its own explanation to the Court in seeking summary judgment – was inflexible, and allowed no exceptions.

The County's response to this is first to suggest that it was not aware of the employee, the Sanitarian I, in question until "2022." This appears to refer to July, 2022 when Anitha Nimmagadda e-mailed, explaining that this employee was not vaccinated, and therefore not in compliance with the policy. For the next several months, HR officials continued to ask for updates about this employee's vaccination status. She stalled for months until October, 2022, when she revealed that she was in the placebo group, and had just finally begun the 2-vaccine regimen. Meanwhile, Plaintiff was put on unpaid leave in October, 2021, and was terminated in May, 2022. The claim that this unvaccinated employee was not terminated because HR was unaware of her cannot be taken seriously.

The County's other explanation – the one that the District Court accepted – was that this employee was a Sanitarian I (the title is given, but no description of this employee's job responsibilities were ever disclosed), and she did not work at Stroger Hospital. Rather, she worked at with the Department of Public Health, which has offices in the suburbs. This is nearly the sum and total of the information provided about this employee, who *absolutely worked on-site.* Nor was there any discussion in the e-mails produced about how this employee's job title or job responsibilities mitigated the risk posed by an unvaccinated employee. Rather, the only difference between the employees, Plaintiff and this unvaccinated Sanitarian I who kept her job, is that Plaintiff's request was religious in nature. The County

evidently understood the value of double-blind testing of vaccine efficacy, but not the sincere relationship between Plaintiff and G-d. It chose to accommodate on a secular basis, but not a religious one.

Plaintiff, meanwhile, had only sporadic contact with patients (who, on the other side of the window, all in line together, were not required to be vaccinated). The greater source of concern for the County was that Plaintiff was in the same large room with other employees. In order for the County's reasoning to hold water, that the Sanitarian I position could be performed by an unvaccinated employee even on-site, it would need to be demonstrated that the employee did not work in a.) a room, b.) with people. Such assurances were never offered for obvious reasons.

But the simple fact that Defendant did employ an on-site unvaccinated employee demonstrates that its explanation for why it could not offer Plaintiff an accommodation was specious. According to Defendant the policy was supremely unflexible, and therefore did not permit *any* employees *anywhere* to work on-site without a vaccine. That is simply not true. The resolution of the legal question therefore comes down to the very specific facts of the case: what did this Sanitarian I do?

If it was Plaintiff's burden to demonstrate those facts, a good argument could be made that Plaintiff fell short, owing to the paucity of information offered about the Sanitarian I. But the burden to demonstrate the inability to offer a reasonable accommodation was Defendant's. Groff, 600 U.S. at 470; Kluge, 64 F.4th at 883; Adeyeye, 721 F.3d at 449. Defendant offered that it could not accept an

accommodation from the policy because the policy was not to be accommodating; but that is plainly not true. Therefore, as a fallback position, Defendant claimed that there are significant differences between the risks posed by Plaintiff's unvaccinated employment and this Sanitarian I's unvaccinated employment. In order for that claim to be accepted, there would have to be some facts offered to support it. There were not. It was error for the District Court to take Defendant's unsupported claim at face value.

It similarly is error to conclude as a matter of law that Plaintiff's requested accommodation – to be permitted to continue doing exactly what she had been doing until that point – was so plainly unreasonable that the question could not be put in front of a jury. This is true regardless of the evidence of Defendant's inconsistency and simple discrimination.

**D. The District Court erred in granting Summary Judgment on Plaintiff's disparate impact claim.**

The disparate impact treatment analysis is similar to the familiar McDonnell Douglas test. It requires Plaintiff to demonstrate "(1) that he was subjected to some adverse employment action; (2) that ... the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs." Porter v. City of Chicago, 700 F.3d 944, 954 (7th Cir., 2012). There was certainly an adverse employment action (phrase simple: you do not work, and

you make no money). There has been no suggestion that Plaintiff's work was unsatisfactory, other than with respect to the claim that she did not vaccinate against COVID-19. But that could not possibly be the basis for her termination given that Defendant did not terminate the Sanitarian I employee, who committed the same violation. It was therefore error to grant summary judgment on that claim.

**E. Conclusion**

Plaintiff was one of the heroes who placed herself in a precarious position early on in the pandemic, without complete knowledge about how dangerous the pandemic was or how to prevent transmission. She did so bravely, volunteering (just for example) to bring medicines and treatments to the COVID-19 floor of Stroger Hospital. When the requirement to vaccinate was announced, all she sought was to continue doing what she had been doing until that moment. She did her job without putting others at risk, and while promoting the interests of her employer.

The County responds that the seriousness of the pandemic allowed no room for subtlety, no exceptions for those who worked on-site. But the County's own conduct belied this claim. It permitted at least one other employee to work on-site. The difference was that the other employee did not seek an exemption based on religion but rather based upon secular concerns. Whether the County sustained its burden of demonstrating the phenomenal difference between these two employees was a question properly left to a jury.

WHEREFORE, Plaintiff requests that this Honorable Court reverse the District Court's decision, and remand with instructions to set this matter for a trial on the merits.

Respectfully Submitted,

s/Jonathan Lubin

Respectfully Submitted,

s/Jonathan Lubin
Attorney for Plaintiffs

Jonathan Lubin
8800 Bronx Ave.
Suite 100H
Skokie, IL 60077
773 954 2608
jonathan@lubinlegal.com

Index of Appendix

December 19, 2025 Decision of Hon. April M. Perry 1

Certificates 12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JETAIME FLORES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-CV-16260 |
| v. | ) | |
| | ) | Judge April M. Perry |
| COOK COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Jetaime Flores ("Plaintiff") brought this employment discrimination action against Cook County ("Defendant"), alleging that Defendant's COVID-19 vaccination policy violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964 ("Title VII"). Doc. 19. Before this Court is Defendant's motion for summary judgment. Doc. 50. For the following reasons, Defendant's motion is granted.

## BACKGROUND

Defendant operates Cook County Health ("CCH"), which with 5,900 employees is one of the largest public health systems in the country. Doc. 52 ¶ 2. CCH provides a range of health care services, including operating John H. Stroger Jr. Hospital ("Stroger Hospital"). *Id.*

Between 2020 and 2022, the COVID-19 pandemic put a significant strain on CCH's operations. *Id.* ¶ 10. By 2022, CCH had cared for more than 2,000 hospitalized COVID-19 patients, provided more than 300,000 COVID-19 tests, and administered over one million doses of the COVID-19 vaccine. *Id.* ¶ 15. Throughout the pandemic, health care workers were at a greater risk than the general public of contracting COVID-19 through exposure to infected patients and other health care staff. *Id.* ¶ 11.

On August 16, 2021, CCH implemented its Mandatory COVID-19 Vaccination for Personnel Policy ("Policy"). *Id.* ¶¶ 24-25. The Policy required staff members to either receive a COVID-19 vaccine or request an exemption by October 1, 2021. *Id.* ¶¶ 24, 27. To request a religious exemption, an employee had to submit a written application to Employee Health Services identifying a "sincerely held religious belief, practice or observance." *Id.* ¶ 26. In September 2021, CCH decided that it would only grant religious exemptions "to employees whose duties could be performed on a fully remote basis." *Id.* ¶ 30. Approximately 102 employees requested religious exemptions. *Id.* ¶ 29. Only the nine employees who were able to work fully remotely had their exemption requests granted. *Id.* ¶ 39. Employees who were denied exemptions because their jobs required them to work in person were given ninety days of unpaid leave to attempt to find remote positions within CCH. *Id.* ¶ 40.

Plaintiff was employed by CCH as a pharmacy technician from 2016 to 2022. *Id.* ¶ 1. In 2021, Plaintiff worked in the outpatient pharmacy at Stroger Hospital. *Id.* ¶ 44. During each shift, Plaintiff worked in one room with thirty to forty other pharmacists and pharmacy technicians. *Id.* ¶ 46. Plaintiff's role included receiving and handing out prescriptions to patients through a window, answering patient inquiries, accepting and typing in electronically received prescriptions, and delivering medications to nurses on a floor caring for COVID-19 patients. *Id.* ¶¶ 47-50. Plaintiff's job duties could not be performed fully remotely. *Id.* ¶¶ 51-52.

On August 30, 2021, Plaintiff submitted a request to Employee Health Services seeking a religious exemption from the COVID-19 vaccination policy. Doc. 52-6 at 2. Plaintiff submitted the following explanation for her need for a religious exemption:

> I am requesting a religious exemption from the Covid-19 vaccination mandate. I am a follower of Jesus Christ who believes The Bible is the inspired Word of God (John 1:1). I believe that innocent life, including that in a mother's womb, is sacred to God, from conception, to birth, to natural death (Psalm 193:13-16). Receiving a vaccine made from aborted fetuses supports an activity that offends my faith, therefore I cannot partake of this vaccine directive.

> Currently all three of the vaccines available were developed or tested using fetal cell lines which started from aborted fetuses. These vaccines were proved by protein testing using the abortion-derived cell line HEK-293. (https://lozierinstitute.org/an-ethics-assessment-of-covid-19-vaccine-programs/)
>
> Additionally I am asking, as is my right under Title VII of the Civil Rights Act of 1964, that you provide a reasonable accommodation. I would like to continue to be a good employee here. I will adhere to wearing a face mask during this timeframe to avoid risk of infection and the spread; I will continue to remain socially distanced per the requirements while on company grounds; I will attest daily to being symptom free or use accrued time off when feeling symptomatic.
>
> I have conferred with the Lord through prayer (James 1:5) and believe that I should respect the body God has given me and rely on Him in every way (1 Corinthians 3:16-17).

*Id*. In later testimony, Plaintiff explained that she and her husband oppose abortion because they have struggled with fertility. Doc. 52 ¶ 63. Plaintiff also testified that she had been concerned about the COVID-19 vaccine being new. *Id.* ¶ 64. Plaintiff had not previously sought a religious exemption for any other vaccines mandated by CCH. *Id.* ¶ 53.

On September 24, 2021, CCH sent Plaintiff a letter denying her request for a religious exemption. *Id.* ¶ 69. The letter explained that unvaccinated personnel were "a threat to the safety or our patients, staff, visitors and [Plaintiff], and exempting [Plaintiff] from the CCH vaccination requirement would compromise workplace safety, infringe upon the rights of our workforce, patients, and visitors, and otherwise would pose an undue hardship to CCH." *Id.* The letter further informed Plaintiff that effective October 1, 2021, employees who had not received the first shot of the vaccine could not work on site. *Id.* ¶ 70.

Despite this, Plaintiff did not obtain the COVID-19 vaccine. CCH granted Plaintiff ninety days of unpaid leave to seek another position within CCH. *Id.* ¶ 72. On January 25, 2022, CCH held a pre-disciplinary hearing on charges that Plaintiff was in violation of CCH's personnel rules for failing to comply with the mandatory COVID-19 vaccination policy. *Id.* ¶ 75. On January 28, the

hearing officer who presided over the pre-disciplinary hearing recommended Plaintiff's termination. *Id.* On May 18, 2022, CCH terminated Plaintiff's employment. *Id.* ¶ 76.

## LEGAL STANDARD

Summary judgment is proper when the movant shows that there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Although the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, if that occurs the nonmoving party must present facts showing there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *LaRiviere v. Bd. of Trs.*, 926 F.3d 356, 359 (7th Cir. 2019). To avoid summary judgment, the nonmovant must show more than metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). While the court must construe the facts in the light most favorable to the nonmovant and draw all reasonable inferences in her favor, this obligation does not extend to drawing inferences that are supported by only speculation or conjecture. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013).

## ANALYSIS

Plaintiff argues that Defendant violated Title VII by failing to accommodate her religious beliefs and subjecting her to disparate treatment based upon her religion. Defendant asserts that it is entitled to summary judgment because (1) Plaintiff cannot establish the existence of a sincerely held religious belief protected by Title VII, (2) allowing Plaintiff to continue to work in

person would have created an undue hardship for Defendant, and (3) there is no evidence that any other similarly situated employee received more favorable treatment under the Policy.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792, 802 (7th Cir. 2025) (internal citation omitted). To establish a failure-to-accommodate claim, a plaintiff must show: (1) she had a sincerely held religious belief or practice that conflicted with her employer's requirements; (2) the plaintiff notified her employer of the religious belief or practice; and (3) the need for a religious accommodation was a motivating factor in an adverse employment decision. *Id.* Once the plaintiff makes this showing, "the burden shifts to the employer to show that any reasonable accommodation would result in undue hardship." *Id.* at 803.

The Court begins with Defendant's argument that Plaintiff has failed to connect her objection to the COVID-19 vaccine with a sincerely held religious belief. At summary judgment, plaintiffs "carry a low burden to establish that they truly hold certain beliefs" and must only show that "(1) the belief for which protection is sought is religious in the person's own scheme of things and (2) that it is sincerely held." *Kluge*, 150 F.4th at 811 (cleaned up). A plaintiff's burden is low because courts "are not arbiters of scriptural interpretation." *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 716 (1981); *Kluge*, 150 F.4th at 811 (noting that "courts

should avoid putting themselves in the impossible position of trying to define religious legitimacy and viewpoint sufficiency" because courts "do not have the expertise to evaluate whether particular religious practices or observances are necessarily orthodox or even mandated by an organized religious hierarchy." (cleaned up)); *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 452 (7th Cir. 2013) ("We are not and should not be in the business of deciding whether a person holds religious beliefs for the 'proper' reasons.").

Here, Plaintiff has met her low burden of establishing a sincerely held religious opposition to the COVID-19 vaccine. Plaintiff wrote in her exemption request that "[r]eceiving a vaccine made from aborted fetuses supports an activity that offends my faith." Doc. 52-6 at 2. Although Plaintiff later testified that she was afraid of the COVID-19 vaccine because it was new and that she was opposed to abortion because of her own fertility issues, Doc. 52 ¶¶ 63-64, it is not required that religious belief be the only force behind a plaintiff's objection to an employer demand, so long as a plaintiff's objection is "at least in part" based upon religious belief. *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024). Given that the Court is required to view all evidence in the light most favorable to Plaintiff and that credibility questions must be resolved in Plaintiff's favor, Plaintiff has done enough for the purposes of summary judgment to demonstrate that she had a sincerely held religious belief that prevented her from being vaccinated.

Defendant next argues that exempting Plaintiff from the COVID-19 vaccine mandate would have caused it undue hardship because Plaintiff's job could not be performed remotely and necessarily included direct contact with patients and coworkers. An accommodation causes undue hardship where an employer faces "substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023). Such an inquiry is fact- and

context-specific, and courts must consider "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Kluge*, 150 F.4th at 803 (cleaned up). An employer must "demonstrate an objective undue hardship on its business, not one just subjectively perceived." *Id.* at 808. That said, when undertaking hardship analysis, "an employer is permitted to draw conclusions based on evidence and information … available at the time." *See Henry v. S. Ohio Med. Center*, 155 F.4th 620, 632 (6th Cir. 2025)). The defendant bears the burden of proof of showing "that any and all accommodations would have imposed an undue hardship." *Adeyeye*, 721 F.3d at 455.

A hospital's business is protecting and promoting health. In fact, the parties in this case have agreed that "CCH has a responsibility to provide the safest care possible for patients." Doc. 52 ¶ 17. During the COVID-19 pandemic, CCH faced an unprecedented challenge trying to protect its patients and staff from a new and deadly virus. Healthcare workers were at a greater risk than the general public of not only contracting COVID-19 themselves, but also of spreading it to high-risk patient populations. *Id.* ¶¶ 11, 33. During this same time, CCH faced staffing shortages and could ill-afford to have their employees taking long quarantine leaves. *Id.* ¶ 10. Once the COVID-19 vaccine was available, Defendant determined that earlier mitigation methods, such as masking, social distancing, and regular COVID-19 testing, were not the best means of addressing these risks. *Id.* ¶ 35. It is undisputed that based upon the medical guidance available at the time, Defendant implemented its mandatory vaccination policy believing that "vaccination [was] the best way to protect against severe illness, hospitalization and death, and the best way to reduce transmission" of COVID-19. *Id.* ¶¶ 25, 32.

Although Plaintiff claims that it would not have been an undue hardship for her to continue to work unvaccinated so long as she work a mask and socially distanced, this is inconsistent with her agreement that CCH's duty was to provide patients with the "safest care possible" and that medical experts believed vaccination to be the best way to reduce transmission of COVID-19. Doc. 52 ¶¶ 17, 32. Plaintiff's job required her to work in the same room with thirty to forty pharmacists and pharmacy technicians. *Id.* ¶ 46. Plaintiff also interacted with patients and delivered medications to nurses on a floor caring for COVID-19 patients. *Id.* ¶ 46, 48-49. Based on these facts, there is no genuine dispute that allowing Plaintiff to continue as a pharmacy technician without the COVID-19 vaccine would have created an undue hardship for CCH's operations, its patients, and its staff. Consistent with the other courts in this district that have granted summary judgment on similar facts, the Court finds that Defendant is entitled to summary judgment because no reasonable accommodation was available consistent with Defendant's obligation to promote staff and patient safety. *See, e.g., Hassett v. United Airlines, Inc.*, 23-CV-14592, 2025 WL 3268667, at *8 (N.D. Ill. Nov. 24, 2025) (finding that United Airlines could not reasonably accommodate pilot's religious exemption request without undue hardship); *Mason v. Cook Cnty.*, No. 23-CV-16339, 2025 WL 2576811, at *4 (N.D. Ill. Sept. 5, 2025) (finding that Cook County Health could not reasonably accommodate plaintiff without undue hardship because allowing plaintiff to continue working as a hospital pharmacist while unvaccinated would have jeopardized the health of staff and patients).

This Court is not persuaded by Plaintiff's argument that *Adeyeye* stands for the proposition that undue hardship must always be a jury question. In *Adeyeye*, a factory worker requested three weeks of unpaid leave to attend burial rights for his father in Nigeria and the Seventh Circuit found a genuine dispute as to whether providing the leave would result in undue

hardship for the employer because there were facts in the record that showed that the employer expected and planned for the frequent turnover of employees by keeping a ready list of temporary workers who could report to work within an hour. *See Adeyeye*, 721 F.3d at 455. In contrast, here there is no evidence that CCH was able to absorb losses of its workers – to the contrary, the undisputed evidence is that CCH was dealing with staffing shortages. Doc. 52 ¶ 10. Moreover, the stakes in this case were significantly higher than in *Adeyeye* because what was at risk was not factory productivity, but people's lives. In short, all of the facts in this record demonstrate an undue hardship on Defendant in allowing Plaintiff to work in-person unvaccinated.[1]

Nor is the Court persuaded that Defendant's undue hardship is disputed because a different employee employed by a different entity in a different position was not vaccinated by the deadline. That employee, referred to by the parties as "Sanitarian I," was employed by the Cook County Department of Public Health ("CCDPH"), an affiliate of CCH, never sought a vaccine exemption, was not vaccinated by the October 1, 2021 deadline, and was not terminated. Doc. 52 ¶¶ 77, 80, 88.[2] However, Plaintiff has not provided any facts from which the Court could reasonably infer that Sanitarian I worked in-person rather than remotely, or if in-person, worked in close proximity to hospital staff or patients. Therefore, even when drawing all reasonable inferences in Plaintiff's favor, the Court cannot conclude that the unvaccinated Sanitarian I posed

---

[1] Plaintiff seems to agree that, although she was given ninety days to find a remote job for which she was qualified, no such job existed. Doc. 53 at 8.

[2] The parties agree that Sanitarian I notified her CCDPH supervisors that she was part of a clinical trial for a COVID-19 vaccine, and therefore did not know whether she had received an experimental vaccine or placebo. Doc. 52 ¶ 78. Although Sanitarian I was told to notify Employee Health and seek an exemption, she seemingly did not do so. *Id.* ¶ 79. CCH did not become aware of Sanitarian I's possibly unvaccinated status until 2022, and did not determine that she was in the placebo group until October 2022, at which time Sanitarian I received the first of her COVID-19 vaccinations. *Id.* ¶¶ 85-88.

a hardship to health and safety in a way that undercuts Defendant's showing of undue hardship with respect to Plaintiff. Defendant bears the burden of demonstrating that it would have been an undue hardship to provide *Plaintiff* a reasonable accommodation. As is discussed above, Defendant has done so. To the extent Plaintiff believes that some other employee's circumstances disprove the proffered undue hardship, she must point to evidence in the record, rather than just speculate that such evidence exists. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013).

For these same reasons, the Court does not find that Sanitarian I provides support for Plaintiff's claim of religious discrimination arising under a disparate treatment theory. To establish a Title VII violation based upon a theory of disparate treatment, the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably. *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022).[3] An employee is similarly situated when they are "directly comparable to [the plaintiff] in all material respects so as to eliminate all other possible explanatory variables." *Crain v. McDonough*, 63 F.4th 585, 592 (7th Cir. 2023).

Here, Plaintiff argues that she was similarly situated to Sanitarian I, and the only possible explanation for their different treatment is religious discrimination. Doc. 53 at 13. But, as discussed above, Plaintiff provides no facts from which the Court can conclude that Sanitarian I was similarly situated to Plaintiff. Plaintiff claims that the Court should assume that Sanitarian I

[3] Of course, disparate treatment is not the only way to prove discrimination. As *Ortiz v. Werner Enterprises, Inc*. noted, the totality of the evidence should also be evaluated to determine whether there is evidence from which a reasonable factfinder could conclude discrimination caused the adverse employment action at issue. 834 F.3d 760, 766 (7th Cir. 2016). But in this case, Plaintiff points solely to disparate treatment in support of her claim of discrimination.

worked in person at a hospital "given the County's refusal to provide almost any information about this employee." Doc. 53 at 14. But the Court is not aware of Defendant having refused to provide information Plaintiff needed to prove her case. Although Plaintiff filed a motion to compel on this topic, Doc. 35, she later withdrew it, Doc. 37. If Plaintiff did not receive information she needed in discovery, it was incumbent upon her to alert the Court of this fact. Based upon this evidentiary record, no reasonable factfinder could conclude that Plaintiff has met her burden that Sanitarian I was similarly situated to Plaintiff. *See Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021). Summary judgment in Defendant's favor is therefore appropriate.

**CONCLUSION**

Defendant's motion for summary judgment is granted.

Dated: December 19, 2025

April M Perry

APRIL M. PERRY
United States District Judge

## Certificate of Service

I, Jonathan Lubin, hereby certify that I caused a copy of this instrument to be served upon all parties of record by filing it with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit, on March 11, 2026.

s/Jonathan Lubin

## Certificate of Compliance with Federal Rules of Appellate Procedure Rule 32(a)(7) and Circuit Rule 32(c)

I, Jonathan Lubin, hereby certify that Plaintiff-Appellant's brief contains fewer than 14,000 words, including footnotes, in accordance with Circuit Rule 32(c).

s/Jonathan Lubin

## Certificate of Compliance Pursuant to Circuit Rule 30(a) and 30(b)

I, Jonathan Lubin, hereby certify that I have included all of the materials in this Short Appendix that are required by the Federal Rules of Appellate Procedure § 30, and Circuit Rule 30(a) and 30(b).

s/Jonathan Lubin