No. 26-1088

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

JETAIME FLORES,

Plaintiff-Appellant,

v.

COOK COUNTY,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Illinois, Eastern Division,
Case No. 23 C 16260
Honorable April M. Perry,
Judge Presiding

# BRIEF OF DEFENDANT-APPELLEE

EILEEN O'NEILL BURKE
State's Attorney of Cook County
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-4635/6665
kathleen.ori@cookcountysao.org
colleen.harvey@cookcountysao.org

CATHY MCNEIL STEIN
Chief, Civil Actions Bureau
JONATHON D. BYRER
Supervisor, Civil Appeals & Special Projects
KATHLEEN C. ORI
COLLEEN HARVEY
Assistant State's Attorneys
*Of counsel*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

JURISDICTIONAL STATEMENT ........ 1

ISSUE PRESENTED ........ 1

STATEMENT OF THE CASE ........ 1

I. COVID-19 and CCH ........ 1

II. Flores' Employment And Ultimate Termination ........ 3

III. Flores' Lawsuit ........ 5

SUMMARY OF ARGUMENT ........ 7

ARGUMENT ........ 7

I. EXEMPTING FLORES WOULD HAVE BEEN AN UNDUE HARDSHIP ........ 8

II. FLORES FAILED TO ESTABLISH HER PRIMA FACIE CASE ........ 13

A. Flores' Objection To Vaccination Was Not Religious ........ 13

B. Flores' Claim Under A Disparate Treatment Theory Also Fails ........ 17

CONCLUSION ........ 18

CERTIFICATE OF SERVICE ........ 19

## TABLE OF AUTHORITIES

Cases | Pages

*Adams v. Mass. Gen. Brigham Inc.*, No. 21-11686,
2023 U.S. Dist. LEXIS 174606 (D. Mass. Sep. 28, 2023)....10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....7

*Cloutier v. Costco Wholesale Corp.*, 390 F. 3d 126 (1st Cir. 2001)....17

*Ervington v. LTD Commodities, LLC*, 555 Fed. Appx. 615 (7th Cir. 2014)....18

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F. 3d 487 (3d Cir. 2017)....14

*Flexible Steel Lacing Co. v. Conveyor Access., Inc.*, 955 F.3d 632 (7th Cir. 2020)....7

*Mason v. Cook Cnty.*, No. 23 C 16339, 2025 U.S. Dist. LEXIS 173416
(N.D. Ill. Sept. 5, 2025)....9, 10

*Groff v. DeJoy*, 600 U.S. 447(2023)....8

*Harris v. Cook Cnty.*, No. 24 C 957, 2026 U.S. Dist. LEXIS 28287
(N.D. Ill. Feb. 11, 2026)....9

*Hassett v. United Airlines, Inc.*, No. 23 C 14592,
2025 U.S. Dist. LEXIS 230498 (N.D. Ill. Nov. 24, 2025)....10

*Henry v. S. Ohio Med. Center*, 155 F.4th 620 (6th Cir. 2025)
*Ill. Cent. R.R. Co.*, 884 F.3d 708 (7th Cir. 2018)....8

*Kluge v. Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792 (7th Cir. 2025)....8

*Kondilis v. City of Chicago*, No. 24-2029,
2025 U.S. App. LEXIS 31291 (7th Cir. Dec. 2, 2025)....2

*Lukaszczyk v. Cook County*, 47 F.4th 587, 607 (7th Cir. 2022))....2

*McCadd v. Kraft Heinz Co.*, No. 22-07096,
2025 U. S. Dist. LEXIS 36333 (N.D. Ill. Feb. 28, 2025)....15, 16

*McDowell v. Bayhealth Med. Ctr., Inc.*, 24-1157,
2024 U. S. App. LEXIS 29065 (3rd Cir. 2024)....16

*Melino v. Bos. Med. Ctr.*, 127 F.4th 391 (1st Cir. 2025)....9

*Passarella v. Aspirus, Inc.*, 108 F. 4th 1005 (7th Cir. 2024)....................................14, 15

*Ritter v. Lehigh Valley Health Network*, No. 22-4897,
2024 U.S. Dist. LEXIS 26883 (E.D. Pa. Feb. 15, 2024)....................................16

*Robinson v. Children's Hosp. Boston*, No. 14-10263,
2016 U.S. Dist. LEXIS 46024 (D. Mass. Apr. 5, 2016)....................................9

*Scheidler v. Indiana*, 914 F.3d 535 (7th Cir. 2019)

*Snyder v. Chi. Transit Auth.*, No. 22 C 6086,
2025 U.S. Dist. LEXIS 117545 (N.D. Ill. June 20, 2025)..........................15, 16

*Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014)...............................7

*Taylor v. Milford Reg'l Med. Ctr. Inc.*, No. 23-40009,
2024 U.S. Dist. LEXIS 85111 (D. Mass. May 10, 2024)................................11

*Together Employees. v. Mass Gen. Brigham Inc.*,
573 F. Supp. 3d 412 (D. Mass. Nov. 10, 2021)................................................9

*Troogstad v. City of Chicago*, No. 25-1575,
2025 U.S. App. LEXIS 32081 (7th Cir. Dec. 9, 2025)....................................14

*United States v. Seeger*, 380 U.S. 163 (1965)......................................................14

*White v. City of Chicago*, 829 F.3d 837 (7th Cir. 2016)............................................8

<u>Statutes & Regulations</u>

28 U.S.C. § 1291..............................................................................................1

28 U.S.C. § 1331..............................................................................................1

42 U.S.C. § 2000e-2(a)......................................................................................1

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Brooke Flores' jurisdictional statement is not complete and correct. Flores filed this suit in the district court, alleging that Defendant-Appellee Cook County's application of its mandatory vaccination policy violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). The district court had jurisdiction pursuant to 28 U.S.C. § 1331.

On December 19, 2025, the district court granted Cook County's motion for summary judgment. R. 56. Flores filed her notice of appeal from that decision on January 18, 2026. R. 58. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## ISSUE PRESENTED

Whether exempting Flores from her employer's COVID-19 vaccination policy would have been an undue hardship, given that a core component of her position as a pharmacy technician was working in-person at the hospital with co-workers and patients.

## STATEMENT OF THE CASE

### I. COVID-19 and CCH.

This case arises out of Cook County Health's ("CCH") decision to terminate Flores following her refusal to comply with its COVID-19 vaccination policy. CCH, a division of Cook County government, is one of the largest public health systems in the country. R. 52 ¶ 2. CCH has roughly 5,900 employees and provides a range of

health care services to its patients and the community, including operating John H. Stroger Jr. Hospital. *Id.*

COVID-19 is a contagious disease that can result in severe infection, illness, hospitalization, and death. R. 52 ¶ 7. On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. *Id.* ¶ 8. Throughout the pandemic, health care workers were at a greater risk than the general public of contracting COVID-19 through exposure to infected patients and other health care staff. *Id.* ¶ 12. The increase in COVID-19 cases in 2020, 2021, and 2022 put a strain on hospitals, including CCH, already dealing with staffing challenges, which was compounded by an increase in staff testing positive for the virus. *Id.* ¶ 10.

As a health care provider, CCH had a responsibility to provide the safest care possible for patients. R. 52 ¶ 17. In response to the COVID-19 pandemic, CCH instituted a "Mandatory COVID-19 Vaccination for Personnel Policy" on August 16, 2021. *Id.* ¶ 24.[1] Although mitigations such as masking and testing were useful prevention tools, vaccination afforded employees with additional protection from severe illness from COVID-19. *Id.* ¶ 22. This policy required staff to receive either (1) a COVID-19 vaccine; or (2) an exemption from, or deferral of, the vaccination requirement based on a medical condition or a sincerely held religious belief. *Id.* ¶ 26. To obtain a religious accommodation, an employee was required to submit a

[1] This court has previously held this policy facially constitutional. *Kondilis v. City of Chicago*, No. 24-2029, 2025 U.S. App. LEXIS 31291, *6 (7th Cir. Dec. 2, 2025) (citing *Lukaszczyk v. Cook County*, 47 F.4th 587, 607 (7th Cir. 2022)).

request to Employee Health Servies identifying a "sincerely held religious belief, practice, or observance." *Id.*

## II. Flores' Employment And Ultimate Termination.

CCH employed Flores as a pharmacy technician, working in the Outpatient Pharmacy at Stroger Hospital. *Id.* ¶ 44. The Outpatient Pharmacy has approximately 30-40 pharmacists and pharmacy technicians working together in a single room on each shift. *Id.* ¶ 46. Flores interacted face to face with her supervisor, pharmacists, and other pharmacy technicians throughout her shift and at lunch, and interacted with patients through a glass partition. *Id.* ¶ 48. Additionally, in 2020 and 2021, as part of her duties as a pharmacy technician, Flores delivered medications to nurses on a floor at Stroger Hospital which cared for COVID-19 patients. *Id.* ¶ 49.

Flores testified that her religion does not prohibit vaccination but that she did not want to take the COVID-19 vaccine because "there was a lot of information about how all of the COVID vaccines were—used testing of aborted fetal cells." *Id.* ¶¶ 57, 60. Flores explained that the information about the fetal cell testing "popped up in a google search" and that she and her husband are against abortion because they had struggled with fertility issues. *Id.* ¶¶ 61, 63. She further explained that before she puts a substance into her body, she "consult[s] the Lord" and she said she takes Adderall for ADHD, Pristiq for anxiety and depression, and has taken Tylenol in the past, and that she has not looked into how Adderall and Pristiq were tested. *Id.* ¶¶ 65-67.

*Id.*

Approximately 102 employees submitted a request for an exemption from the vaccine requirement on the basis of a sincerely held religious belief. *Id.* ¶ 29. Based on internal guidance from CCH's Infection Control and Epidemiology Department, as well as guidance from the Center for Disease Control and other public health entities on the state of the pandemic and the transmission of COVID-19, CCH's leadership team determined in September 2021 that exemption requests based on a sincerely held religious belief could only be granted to employees whose duties could be performed on a fully remote basis. *Id.* ¶ 30. CCH's decision to only allow vaccinated employees to work in patient-facing and employee-facing roles in person was based on the CDC's recommendation that vaccination is the best way to protect against severe illness, hospitalization and death, and the best way to reduce transmission. *Id.* ¶ 32. CCH granted exemptions to the vaccine requirement to approximately nine employees because their respective positions could be performed on a fully remote basis. *Id.* ¶ 39.

Nicholas Krasucki, the CCH Equal Employment Opportunity Director, sent Flores a letter denying her request for a religious exemption. *Id.* ¶ 69. The letter explained that "unvaccinated personnel poses a threat to the safety of our patients, staff, visitors and [Flores], and exempting [Flores] from the CCH vaccination requirement would compromise workplace safety, infringe upon the rights of our workforce, patients, and visitors, and otherwise pose an undue hardship to CCH." *Id.* The letter also informed Flores that, effective October 1, 2021, employees who

had not received at least the first shot of the COVID-19 vaccine would not be permitted to work on site. *Id.* ¶ 70. CCH granted Flores a 90-day unpaid leave to seek another position within CCH. *Id.* ¶ 72.

After the 90 days passed, CCH held a pre-disciplinary hearing on charges that Flores was in violation of CCH's personnel rules for failing to comply with the COVID-19 mandatory vaccination policy. *Id.* ¶ 75. The hearing officer who presided over the pre-disciplinary hearing recommended that CCH terminate Flores. *Id.* CCH then terminated Flores' employment. *Id.* ¶ 76.

## III. Flores' Lawsuit.

Following her termination, Flores filed this lawsuit, alleging that CCH's denial of a religious accommodation violated Title VII of the Civil Rights Act of 1964. R. 9. Specifically, Flores alleged that CCH "offered an accommodation" to an employee who did not vaccinate and who had sought an accommodation based on non-religious factors. *Id.* at 3. Discovery revealed, however, that CCH did not grant any accommodation to the employee in question. R. 52 ¶ 84.

Rather, the employee in question, who worked in the position Sanitarian I (a position not at the hospital) while participating in a COVID-19 vaccine trial, never submitted a religious or medical exemption from the policy to Employee Health Servies. R. 52 ¶¶ 77, 78, 80. Since no accommodation was sought, CCH's Human Resources never evaluated the duties of the employee to determine whether this employee's duties could be performed on a fully remote basis and never granted an exemption. R. 52 ¶ 84.

CCH moved for summary judgment on two grounds. R. 51. First, Flores cannot establish that she had a genuine religious belief that conflicted with the policy or that CCH was motivated by Flores' religion when it terminated her employment. *Id.* at 7. Second, even if Flores had a sincerely held religious belief that conflicted with the policy, CCH could not accommodate her request to be exempt from vaccination because allowing unvaccinated employees to remain working within the hospital would create an undue hardship on the hospital. *Id.* at 11. In response, Flores argued that, at the summary judgment stage, (1) she had presented sufficient evidence that her objection to being vaccinated was based on a sincere religious belief and (2) she was similarly situated to the Sanitarian I who was permitted to work on-site despite not being vaccinated. R. 53 at 1-2.

The district court granted CCH's motion for summary judgment. App. 1-11 The district court found that Plaintiff "ha[d] done enough for the purposes of summary judgment to demonstrate that she had a sincerely held religious belief that prevented her from being vaccinated." *Id.* at 6. However, the district court concluded that it would have been an undue hardship for CCH's operations, its patients, and its staff to accommodate Flores' request for an exemption from its mandatory COVID-19 vaccination policy because (1) Plaintiff agreed that "CCH's duty was to provide patients with the 'safest care possible' and that medical experts believed vaccination to be the best way to reduce transmission of COVID-19"; (2) Plaintiff's job required her to work in the same room with 30-40 pharmacists and pharmacy technicians; and (3) Plaintiff interacted with patients and delivered

medications to nurses on a floor caring for COVID-19 patients. *Id.* at 8. Finally, the district court did not agree that the Sanitarian I was a similarly-situated comparator because Flores failed to provide "any facts from which the Court could reasonably infer that Sanitarian I worked in-person rather than remotely, or if in-person, worked in close proximity to hospital staff or patients." *Id* at 9.

## SUMMARY OF ARGUMENT

This court should affirm the district court's summary judgment order. No reasonable jury would find that CCH could have exempted Flores from the COVID-19 vaccination without incurring an undue hardship related to both staffing and patient care. Additionally, Flores failed to establish that she had a bona fide religious objection to being vaccinated.

## ARGUMENT

While this court reviews the district court's decision on summary judgment *de novo*, the district court's decision should be upheld where the record shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Flexible Steel Lacing Co. v. Conveyor Access., Inc.*, 955 F.3d 632, 643 (7th Cir. 2020); *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine issue of material fact only exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, the court considers all of the evidence in the record in the light most favorable to the non-moving party and draws all reasonable inferences from that evidence in favor of the party opposing summary

judgment, *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018); but only reasonable inferences are permitted, "not speculative inferences." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

Applying this standard, the undisputed evidence demonstrates that CCH could not have exempted Flores from the COVID-19 vaccination without incurring an undue hardship related to both staffing and patient care. On appeal, Flores' unsupported speculation that the Sanitarian I is a comparator is not supported by the record. Additionally, Flores failed to establish that she had a bona fide religious objection to being vaccinated.

## I. Exempting Flores Would Have Been An Undue Hardship.

Even assuming, for sake of argument, that Flores had a sincere religious belief against the COVID-19 vaccination and CCH was aware of that sincerely held religious belief, exempting Flores from the vaccine mandate would have caused an undue hardship for CCH's operations. Title VII does not require employers to accommodate their employees' religious beliefs if doing so would cause an undue hardship. *Groff v. DeJoy*, 600 U.S. 447, 471 (2023). A hardship is "undue" in this context if it "would be substantial in the context of an employer's business." *Id.* Such a hardship must be demonstrated objectively, not on the basis of the employer's subjective perceptions. *Kluge v. Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792, 808 (7th Cir. 2025). That said, when undertaking hardship analysis, "an employer is permitted to draw conclusions based on evidence and information ... available at the time." *Henry v. S. Ohio Med. Center*, 155 F.4th 620, 632 (6th Cir.

2025). "Undue hardship can also exist if the proposed accommodation would either cause or increase safety risks or the risk of legal liability for the employer." *Robinson v. Children's Hosp. Boston*, No. 14-10263, 2016 U.S. Dist. LEXIS 46024, at *26 (D. Mass. Apr. 5, 2016) (citation omitted); *Together Employees. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 437 (D. Mass. Nov. 10, 2021) (concluding the defendant established a likelihood of success on its contention that granting an exemption from the hospital's COVID-19 vaccination policy would cause an undue hardship).

While yet to be decided by the Seventh Circuit, other courts have considered the direct economic costs on the employer, as well as indirect costs related to health and safety, in assessing undue hardship on employers in the COVID-19 pandemic context. *Melino v. Bos. Med. Ctr.*, 127 F.4th 391, 397-398 (1st Cir. 2025) (affirming summary judgment because the defendant hospital implemented its vaccine requirement based on the CDC's recommendations, which describe vaccines as mitigating the effects and spread of COVID-19). Similarly, district courts have found that an employer can establish undue hardship under certain conditions. *See Mason v. Cook Cnty.*, No. 23 C 16339, 2025 U.S. Dist. LEXIS 173416, *11 (N.D. Ill. Dec. 19, 2025) (granting summary judgment in favor of Cook County and finding "[b]ased on these facts, it is not genuinely disputed that allowing Ms. Mason to continue working as a pharmacist at Stroger Hospital when she was unvaccinated

would have jeopardized the health of CCH staff and patients.");[2] *Harris v. Cook Cnty.*, No. 24 C 957, 2026 U.S. Dist. LEXIS 28287, *10 (N.D. Ill. Feb. 11, 2026) (finding "[t]he agreed-upon facts in this case establish that permitting plaintiff to continue interacting with immunocompromised patients while unvaccinated would have jeopardized their health."); *Hassett v. United Airlines, Inc.*, No. 23 C 14592, 2025 U.S. Dist. LEXIS 230498 (N.D. Ill. Nov. 24, 2025) (finding that United Airlines could not reasonably accommodate pilot's religious exemption request without undue hardship); *Adams v. Mass. Gen. Brigham Inc.*, No. 21-11686, 2023 U.S. Dist. LEXIS 174606 at *15 (D. Mass. Sep. 28, 2023) (citing U.S. Equal Emp. Opportunity Comm'n, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws: § L (2021)).

At summary judgment, Flores did not dispute that health care workers were at a greater risk than the general public of contracting COVID-19 through exposure to infected patients and other health care staff and that an increase in COVID-19 cases in 2020, 2021, and 2022 put a strain on CCH, already dealing with staffing challenges, which was compounded by an increase in staff testing positive for the virus. R. 52 ¶¶ 10, 11. CCH leadership implemented its COVID-19 policy based on public health guidance, including the CDC's recommendation that vaccination was the best way to reduce transmission of COVID-19. R. 52 ¶ 32. When implementing the policy, CCH's leadership team was aware that healthcare workers were at

[2] The Seventh Circuit has scheduled oral arguments in *Mason v. Cook County* for June 2, 2026.

increased risk of contracting COVID-19 through infected patients and other healthcare staff, and that healthcare workers were at increased risk of infecting patients, including individuals who were medically vulnerable. *Id.* ¶ 33. Based on internal guidance from CCH's Infection Control and Epidemiology Department, as well as guidance from the CDC and other public health entities on the state of the pandemic and the transmission of COVID-19, CCH leadership determined in September 2021 that exemption requests based on a sincerely held religious belief could only be granted to employees whose duties could be performed on a fully remote basis. *Id.* ¶ 30. Courts have held that hospitals should be afforded "substantial deference" when making determinations about appropriate measures to cope with a worldwide pandemic because they are uniquely positioned to balance different responses to the outbreak of disease. *Taylor v. Milford Reg'l Med. Ctr. Inc.*, No. 23-40009, 2024 U.S. Dist. LEXIS 85111, at *16 (D. Mass. May 10, 2024).

CCH's vaccination directive balanced its mission to provide quality health services to all Cook County residents with its responsibility to provide the safest care possible. R. 52 ¶¶ 16, 17. CCH determined that other mitigation methods, such as masking, social distancing, and regular COVID-19 testing did not sufficiently address the patient and employee safety risk across its facilities. *Id.* ¶ 35. In carrying out that directive, Human Resources evaluated the duties of employees who requested religious exemptions to determine if their duties could be performed on a fully remote basis. *Id.* ¶ 36. Since Flores' position involved direct patient care as well as interactions with coworkers and her duties could not be performed

remotely, CCH concluded that it could not grant Flores a religious exemption to its policy without incurring undue hardship to its operations during a global pandemic. *Id.* ¶ 69.

On appeal, Flores argues that CCH cannot establish it would be an undue burden to accommodate her and exempt her from the vaccination requirement because "[t]he accommodation that Plaintiff sought was to continue doing what she had been doing up until she was told she could no longer do it. Prior to the vaccine policy, she was masking while at work, and socially distancing in accordance with the County's requirements." Flores Br. 13. This argument blinks reality – Flores was not merely seeking to remain in her position, but seeking to remain in her position after a catastrophic change in circumstances directly affecting the health care industry: a historic global pandemic. And the undisputed facts demonstrated that the status quo of permitting unvaccinated employees to continue working in person with other employees and patients during that pandemic would impose significant new costs on the hospital that would not have existed in that pandemic's absence. As a health care provider, CCH had a responsibility to provide the safest care possible for patients and vaccination afforded employees additional protection from severe illness from COVID-19. R. 52 ¶¶ 17, 22. Health care workers were at a greater risk than the general public of contracting COVID-19 through exposure to infected patients and other health care staff. *Id.* ¶ 11. Further, an increase in COVID-19 cases in 2020, 2021, and 2022 put a strain on CCH, as it was already dealing with staffing challenges that were only compounded by an increase in staff

testing positive for the virus. *Id.* ¶ 10. CCH's decision to only allow vaccinated employees to work in patient-facing and employee-facing roles in person was based on the CDC's recommendation that vaccination is the best way to protect against severe illness, hospitalization and death, and the best way to reduce transmission. *Id.* ¶ 32. As such, because Flores' requested accommodation to remain unvaccinated posed an undue hardship on CCH's business, Flores' Title VII claim fails as a matter of law, warranting summary judgment.

## II. Flores Failed To Establish Her Prima Facie Case.

Although the district court found Flores had presented enough evidence to demonstrate the sincerity and/or religiosity of her objection to the COVID-19 vaccine, this court may affirm summary judgment on any preserved ground revealed by the record. *Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019). Thus, even assuming that Flores' requested accommodation would not have imposed an undue burden, this court can affirm on the alternative ground that Flores failed to establish a crucial element of her prima facie case: that her religious beliefs conflicted with CCH's policy. In fact, Flores failed to produce any evidence to establish that her religious beliefs prohibited her from being vaccinated against COVID-19.

### A. Flores' Objection To Vaccination Was Not Religious.

For purposes of a Title VII religious-discrimination claim, a belief is broadly considered "religious in nature" if it is "sincere and meaningful [and] occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God."

*United States v. Seeger*, 380 U.S. 163, 165-66 (1965). "A belief is religious if it 'addresses fundamental and ultimate questions having to do with deep and imponderable matters, is comprehensive in nature, consisting of a belief-system as opposed to an isolated teaching, and is accompanied by certain formal and external signs.'" *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F. 3d 487, 491 (3d Cir. 2017). In determining whether an employee has sought an accommodation from a policy based on a religious reason, this court has held the analysis "requires a holistic assessment of the terms of the employees' exemption request." *Passarella v. Aspirus, Inc.*, 108 F. 4th 1005, 1009 (7th Cir. 2024). But, since *Passarella,* this court clarified that while this is not a high standard, there must be some factual support to articulate a religious component to an objection. *Troogstad v. City of Chicago*, No. 25-1575, 2025 U.S. App. LEXIS 32081, *6 (7th Cir. Dec. 9, 2025) (holding the plaintiff "failed to allege facts about *how* taking the vaccine violated his religious beliefs. He misses that step.").

At summary judgment, Flores failed to provide sufficient evidence to establish being vaccinated against COVID-19 violates a tenet or principle of her religious belief. Flores' objection to the COVID-19 vaccine, can be summarized as: (1) being concerned that the COVID vaccines were new; (2) based on an internet search where she read that COVID vaccines used fetal cell lines in testing and being opposed to abortion because she struggled with fertility; and (3) she consults the Lord before she puts a substance in her body and felt after prayer she should not take the vaccine (although she takes other medications). R. 52 ¶¶ 61, 62, 64, 64-

68. Importantly, Flores concedes that her religion does not prohibit vaccination. *Id.* ¶ 57. As such, Flores' beliefs are personal, are not religious in nature, and not afforded Title VII protections.

While Flores claims her refusal of the COVID-19 vaccine is grounded in her Christian faith, she identifies no specific religious tenet that conflicts with the COVID-19 vaccine. Defendant acknowledges this court's recent decision in *Passarella*, but notes that *Passarellla* was decided at the motion to dismiss stage. Recently, two district courts recognized *Passarella* but still found the plaintiff's claim to be without merit at the summary judgment stage. *See McCadd v. Kraft Heinz Co.*, No. 22-07096, 2025 U. S. Dist. LEXIS 36333, (N.D. Ill. Feb. 28, 2025) and *Snyder v. Chi. Transit Auth.*, No. 22 C 6086, 2025 U.S. Dist. LEXIS 117545 (N.D. Ill. June 20, 2025). The plaintiff *McCadd* cited broad principles that her "body is a temple" that cannot be "defiled" by substances and that she must consult with God when ingesting some, but not all, substances (i e., alcohol, food, etc.) to ensure that her body is not "defiled." 2025 U. S. Dist. LEXIS 36333, *9-10. The district court found that the plaintiff's refusal to receive the COVID-19 vaccine because it would "defile" her body stated a concern about harm to her body, which is a medical belief, and not religious. *Id.* Similarly, the district court in *Snyder* held that, at summary judgment, the plaintiff did not show that his objections to the COVID-19 vaccines were religious in nature based on his objections that vaccines usually contain "unnatural harmful things," that are "unclean and do harm to the body long-term;" the vaccines were developed rapidly and without adequate testing; the long-term

effects of the vaccines were unknown; vaccines were considered experimental by scientists and doctors; and expressing concerns about vaccine side effects, ingredients, and development). 2025 U.S. Dist. LEXIS 117545, *11-12. Other courts have rejected similar objections being religious in nature. *See, e.g., McDowell v. Bayhealth Med. Ctr., Inc.*, 24-1157, 2024 U. S. App. LEXIS 29065, *4 (3rd Cir. 2024) (holding that the plaintiffs' objection that "their bodies are G-d's temples, and that receiving the vaccine violates that religious teaching" does not plausibly allege "a sufficient nexus between their religious beliefs about their bodies being G-d's temples and their objections to the vaccine."); *Ritter v. Lehigh Valley Health Network*, No. 22-4897, 2024 U.S. Dist. LEXIS 26883, *12 (E.D. Pa. Feb. 15, 2024) (concluding that the plaintiff's belief that her body is a "temple of His Holy Spirit" amounts to a blanket privilege and a limitless excuse for avoiding all unwanted obligations).[3]

Like the plaintiffs in *McCadd*, *Snyder*, and similar cases, Flores' beliefs are rooted in a concern as to what she is putting in her body and the process by which the vaccine was developed. R. 52 ¶¶ 61-64. And Flores concedes that her religion does not prohibit vaccination. *Id.* ¶ 57. Because Flores fails to demonstrate a religious belief that conflicts with the policy, this court can affirm the district court's decision granting summary judgment.

---

[3] The fact that this particular alleged belief would provide a generic blanket exemption to all unwanted interactions with one's body further demonstrates that accommodating that belief would be an undue burden on an employer.

**B. Flores' Claim Under A Disparate Treatment Theory Also Fails.**

To the extent Flores relies on the disparate treatment theory, her discrimination claim also fails because there is no evidence that employees of different religious groups received more favorable treatment under the policy. In fact, CCH only approved a limited number of religious exemption requests because most hospital-related positions need to be performed in-person at the hospital. R. 52 ¶ 39. Flores concedes that she could not perform her position as a pharmacy technician on a remote basis. *Id.* ¶ 50. While a Sanitarian I worked for a period of time while not showing proof of vaccination, the undisputed evidence is that (1) this employee did not work in-person at the hospital; (2) this employee did not submit a request for accommodation; (3) CCH never evaluated an accommodation request from this employee, and (4) there is no record of this individual receiving an exemption from the policy. *Id.* ¶¶ 77, 80, 83, 84. Since this individual did not work at the hospital and never sought accommodation from the policy (and CCH never evaluated a request), she was not similarly situated to Flores.

There is no evidence that this employee was given preferential treatment; rather it appears that in a system of thousands of employees, CCH was unaware of one employee's vaccination status for a period of time. *See Cloutier v. Costco Wholesale Corp.*, 390 F. 3d 126, 137 (1st Cir. 2001) (finding the plaintiff's assertion that it would not be an undue hardship for the defendant to relax its dress code because it "allowed" other employees to have facial piercings unpersuasive because it implies that the defendant was aware of the piercings when constant monitoring

of several hundred employees would be impossible). In short, Flores cannot show that CCH would have applied its policy differently if she belonged to another religion. *Ervington v. LTD Commodities, LLC*, 555 Fed. Appx. 615, 618 (7th Cir. 2014) (rejecting religious discrimination claim under disparate treatment theory).

## CONCLUSION

This Court should affirm the district court's granting of summary judgment.

Respectfully submitted,
EILEEN O'NEILL BURKE
State's Attorney of Cook County

By: /s/Kathleen Ori
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-4635/6665
kathleen.ori@cookcountysao.org
colleen.harvey@cookcountysao.org

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Kathleen Ori*