26-1088

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

Jetaime Flores,

Plaintiff/Appellant,

v.

Cook County,

Defendant/Appellee.

On Appeal from a decision of the
United States District Court for the Northern District of Illinois
Case No. 23 CV 16260
Hon. April M. Perry

Reply in Support of Appeal

Jonathan Lubin
8800 Bronx Ave.
Suite 100H
Skokie, IL 60077
773 954 2608
jonathan@lubinlegal.com

Table of Contents

**Argument** ..... 1

**I. The County did not sustain its burden of demonstrating that accommodating Plaintiff would have created an undue burden.** ..... 1

**II. Plaintiff's request for an accommodation was sufficiently religious.** ..... 10

**III. Conclusion.** ..... 13

Table of Authorities

**Cases**

Baumgartner v. City of Chicago, 759 F.Supp.3d 688 (N.D. Ill, 2024) ..... 12

Bube v. Aspirus Hosp., Inc., 108 F.4th 1017 (7th Cir. 2024) ..... 10

Groff v. Dejoy, 600 U.S. 447 (2023) ..... 2, 3

Keene v. City and County of San Francisco, 22-16567, (9 Cir., May 15, 2023) ..... 11

Kluge v. Brownsburg Community School Corp., 150 F.4th 792 (7th Cir., 2025) ... 4, 6, 10

Koger v. Bryan, 523 F.3d 789 (7th Cir., 2008) ..... 11

McCormack v. Chicago Transit Authority, 23 C 1998 (N.D., Ill., August 30, 2023) . 12

Melino v. Boston Med. Center, 127 F.4th 391 (1st Cir., 2025) ..... 6

Passarella v. Aspirus, Inc., 108 F.4th 1005 (7th Cir., 2024) ..... 12

Saklski v. City of Chicago, 23-15360 (N.D. Ill, March 27, 2026) ..... 12

Sanchez v. Rock Island County Health Dep't, 4:23-cv-04007-SLD-RLH (Ill. C.D, Jan. 22, 2026) ..... 7

Thomas v. Review Board of the Indiana Emp. Sec. Div., 450 U.S. 707 (1981) ... 11, 12

## Argument[1]

### I. The County did not sustain its burden of demonstrating that accommodating Plaintiff would have created an undue burden.

The Response makes a fundamental error in how it frames the decision faced by Cook County. It suggests that while Flores's claim that she be permitted to continue doing exactly what she had been doing may seem reasonable in the abstract, that all changed with the introduction of COVID-19. But COVID-19 was first identified in the United States in February, 2020, and fundamentally changed the lives of every American starting in mid-March of 2020. Flores was suspended without pay in the fall of 2021, over 1.5 years later, to be terminated in May, 2022, over two years after COVID-19 first arrived on our shores. In the time between March of 2020 and fall of 2021, Flores faithfully fulfilled her role, dispensing pharmaceuticals to out-patients at Stroger Hospital. What changed, over a year after COVID-19 came to this country, was the vaccine mandate. What Plaintiff had been doing for over 1.5 years suddenly became not enough.

The request for an accommodation was therefore a request for Plaintiff to be permitted to continue to do her job in an exemplary fashion as she had been doing through the pandemic. The 180-degree switch from celebrating nursing and medical personnel (complete with ridiculous TikTok dance videos) to demeaning them for wanting to continue to do their important jobs of saving lives and healing people

---

[1] This Reply is based largely on the Reply in the matter of Mason v. Cook County, 25-2743. The facts are similar between both cases, and the parties are represented by the same attorneys.

gave many people like Plaintiff whiplash. The only thing that had really changed in the world was that COVID-19 was less lethal, less a daily part of our lives, in fall of 2021 than it had been in March through July of 2020. But the narrative-shift recast Plaintiff from hero to pariah overnight. In reality, she was always a hero; and her request for an accommodation was factually, practically, and legally, a request to be permitted to continue doing her job just as she had been doing before.

In support of its argument, Defendant claims that the Supreme Court's Groff v. Dejoy decision established that "indirect costs" like health and safety, as opposed to direct economic costs, can constitute an "undue burden" under Title VII. Its reading of that decision finds no comfort in the majority opinion. The Groff decision stated that whether a substantial burden exists turns on whether the accommodation "would result in substantial increased costs in relation to the conduct of its particular business." Groff v. Dejoy, 600 U.S. 447, 470 (2023). The majority decision explains that this means that the Court must engage in an assessment "of a possible accommodation's effect on the conduct of the employer's business." *Id.* at 472, citing 42 U.S.C. § 2000e(j). In that sense, "not all impacts on coworkers are relevant, but only coworker impacts that go on to affect the conduct of the business." *Id.* "So an accommodation's effect on co-workers may have ramifications for the conduct of the employer's business, but a court cannot stop its analysis without examining whether that further logical step is shown in a particular case." *Id.*

Before going further, nothing like that happened here. There was no suggestion that Plaintiff's coworkers actually objected to Plaintiff continuing to do her job as she had been doing before. Cook County created a top-down mandate for its employees. It may ostensibly be the case that the same employees who had been Flores's coworkers for the prior 1.5 years suddenly developed an intense animosity towards her based upon her decision to continue unvaccinated. But if this was the case, the County did not claim that in any of its briefing. It couches its argument as *concern* for coworkers; but no *evidence* was cited (for example, statements of even one of her coworkers) in support of that. Rather, the Response argues in effect that her coworkers would benefit from her termination, whether they know it or not, without bringing any evidence in support of this belief whatsoever. Its other claim is that the requirement for her to vaccinate was for the safety of patients (the hospital's customers), who stood on the other side of the glass from the pharmacy, in line with other patients who were not required to vaccinate. This justification of the policy may be the County's sincere belief, but no evidence is cited in support of these "findings." Certainly, no statement of any patient/customer was brought to justify this belief. While Flores was behind a glass panel, the potentially unvaccinated masses were permitted to mill about in the area where Stroger's patients waited in line. The suggestion that requiring Flores to vaccinate made patients safer is hard to square with that reality.

The Response suggests that Groff is not so limited. In doing so, it cites the concurring opinion (the pinpoint citation is to 476 of the opinion, which is the

concurrence, though the Response does not quote any of its language), which elaborates on the above-referenced focus on the impact of any accommodation to coworkers. But the majority decision was fairly limited in its treatment of the matter: the critical component of an undue hardship is economic; and even though the impact on coworkers may be a function of that calculus, the critical component is nonetheless economic. To be clear, casting the critical component of the analysis as economic does not mean that it weighs on some dollar figure (though this restrictive interpretation would certainly inure to Plaintiff's benefit). Rather, it means that the employer must show that a reasonable accommodation substantially prevents an employer from carrying on its "business."

The Response states that this Court has not weighed in on how non-economic factors impact the "undue burden" analysis, but that other courts have. But even this is incorrect. The Response largely ignores Kluge v. Brownsburg Community School Corp., 150 F.4th 792 (7th Cir., 2025). That decision analyzed whether a teacher at a public school was entitled to an accommodation from a policy requiring him to call students by the first names, including first names selected by transgender students that did not comport with their biological sexes. *Id.* at 796-7. The employee claimed that being required to call transgender students by their selected first names violated his religious beliefs. He therefore sought to call students by their last names as a compromise. This Court's analysis began with determining the purported mission of Defendant, as that is the school's "business" for the purpose of Title VII. *Id.* at 805. Finding little evidence of what that was,

outside of ad-hoc statements offered late in litigation, it nonetheless found that the school's mission must have at least included the safety of its students. *Id.* at 805-6. The problem was that there was no evidence that calling students by their last names impacted their safety. *Id.* at 806. "Even if emotional distress qualifies as an undue hardship, Groff requires the employer to prove both that there was a hardship, and that the accommodation caused that hardship." *Id.* This involves "an objective showing." *Id.* at 807. "Given how many other Title VII claims require an objective showing, it follows that religious-accommodation cases require an employer to demonstrate an objective undue hardship on its business, not one just subjectively perceived." *Id.* at 808. In support of this finding, Kluge refers to the EEOC's compliance manual, which states that "undue hardship requires more than proof that some coworkers complained or are offended by an unpopular religious belief." *Id.* "Rather, coworkers must show 'that the accommodation would actually infringe on the rights of coworkers or cause disruption of work.'" *Id.* That is, they must demonstrate that the accommodation "infringes on coworkers abilities to perform their duties" or "subjects them to a hostile work environment." *Id.* Most importantly, the analysis here must be objective. *Id.*

The Kluge decision also took pains to point out that the undue burden analysis does not turn on the good faith or bad faith of the employer. As opposed to disparate impact claims, failure to accommodate claims do not require the employee to demonstrate intentional discrimination, nor do they relieve an employer of liability simply because it had no discriminatory animus. *Id.* at 807. "Indeed, this

subsection is the sole part of the statute that requires employers to affirmatively bear additional cost to accommodate employees." *Id.* "For this reason, it is the employer's burden to prove undue hardship arising from the accommodation, not to merely offer a good-faith – yet mistaken – reason for taking an adverse employment action." *Id.* That is, it is insufficient for an employer to demonstrate a legitimate nondiscriminatory reason for discharging an employee. *Id.* "To the extent this requires courts to defer less to employers than in disparate-treatment discrimination cases, that is by Title VII's design." *Id.*

Here, the County acted by fiat (that is, it did not act due to a groundswell of outburst from patients or coworkers), and it did not produce any evidence other than conjecture on the impact of accommodating Plaintiff. For this reason alone, the Response falls short. There was no showing, nor could there have been, that employees were unable to do their jobs, or would have been had Plaintiff continued being employed. Indeed, those employees who felt it was important to vaccinate would have been able to take comfort in knowing that they were safe from COVID-19 due to their vaccination had Plaintiff remained employed. That is to say, their position improved dramatically, from a safety standpoint, assuming that the COVID-19 vaccinations were indeed effective (which, to a point, they of course were).

Even the Response's reference to a single decision from outside of the Seventh Circuit does not change that analysis. It points to Melino v. Boston Med. Center, 127 F.4th 391 (1st Cir., 2025). But that decision's analysis of the undue

hardship standard stands in contrast to the analysis required here. There, the employee argued that the onus was on defendants to demonstrate that COVID-19 vaccines were effective. *Id.* at 397-8. For the purposes of this suit, Flores has not questioned whether being vaccinated against COVID-19 provided better protection against COVID-19 than being unvaccinated against COVID-19. A District Court in the Central District also noted this distinction in Sanchez v. Rock Island County Health Dep't, 4:23-cv-04007-SLD-RLH (Ill. C.D, Jan. 22, 2026), finding that that the argument in Melino was not that accommodation would create an undue hardship, but rather that the vaccines were not proven to be effective. This is a different argument than Flores, and therefore has no bearing here.

As in the matter here, the principle claim advanced in Rock Island was that accommodating the employee's request for an accommodation did not constitute an undue burden. The Court in that matter denied summary judgment (both the employees' motion and the employer's motion), finding the question to be one of fact. Specifically, it found that a reasonable juror could conclude, based upon the nature of in-person services provided to patients of the health department, either that accommodating unvaccinated employees constituted an undue hardship, or that it did not. Certainly, social distancing and other remediation tactics were open to employees, employers, and patients. But they were not always complete. Like in this matter, in which Plaintiff (rarely) had to interact with patients other than through a glass partition, in that matter some level of contact was unavoidable. Summary judgment in either direction was nonetheless inappropriate. *Id.*

All of this suggests that it was error to grant summary judgment to the County, and the issue of the Sanitarian I has not even been mentioned yet. That employee, who also worked for Defendant under the same policy which forbade any onsite employees from working without being vaccinated, was permitted to continue working despite not having vaccinated due to her participation in a double-blind study of a vaccine that was never approved. That employee was part of the placebo group, and therefore was completely unvaccinated even ignoring the lack of approval for the vaccine that was the subject of the trials.

Given that the burden of demonstrating an undue burden is Defendant's, it was not Plaintiff's burden to demonstrate that her job description was similar enough to the unvaccinated employee's to be a comparator. Rather, it was the County's burden to demonstrate otherwise. That means that it was the County's burden not merely to explain that the Sanitarian I did not work at Stroger Hospital (as if the only way a person could possibly contract COVID-19 is from an employee behind a glass barrier at Stroger Hospital, as opposed to in the suburbs through any other form of human contact), but to explain the specific circumstances distinguishing this employee from Flores, such that denying Flores's request was not inconsistent with its apparent application of the policy..

Even if the County could do this, it still would not explain how this employee was able to continue working despite the ostensibly unforgiving nature of the policy: every on-site employee must be vaccinated according to the policy. Particularly given that it is Defendant's burden to demonstrate undue hardship, the existence of

an exception to its strict rule of on-site vaccination demonstrates that the rule was, in effect, not a rule. The County, both in the Response and while briefing summary judgment, treated the decision to deny Plaintiff's accommodation as a *fait accompli*. That is, the decision was hardly in their hands to begin with, given the stringent nature of the County's policy. Their hands were tied, they argued. But the County's policy is demonstrably capable of being bent (that is, their hands were not tied). The evidence is that the County was willing to bend it for the Sanitarian I employee. The only distinction between the employees, in terms of the policy, appears to be that while Plaintiff sought accommodation on a religious basis, the Sanitarian I employee sought to be accommodated on a secular basis. The County points to Plaintiff's work location at Stroger. But its policy makes no distinctions between Stroger and the suburbs. Further, humans who are susceptible to COVID-19 exist in both the city and the suburbs.

The other distinction proffered by the County is that Human Resources was not aware of the Sanitarian I employee's violation of the policy until close to the time when Plaintiff was terminated. This is hardly a defense. This only means that the while Plaintiff complied with the policy, the Sanitarian I employee *did not*. She was insubordinate, and was evidently rewarded as a result. As pointed out in the opening brief, Plaintiff was not terminated until mid-2022, by which time the County had long-since been aware of the Sanitarian I's noncompliance. Specifically, the County identified this employee in an affidavit well before Plaintiff's termination, in late 2021. Therefore, the County was aware of the employee and

waived the policy. Given that, it cannot sustain its burden, particularly when the evidence is construed in Plaintiff's favor, of demonstrating that the policy was so strictly adhered to that no accommodations could possibly be offered.

## II. Plaintiff's request for an accommodation was sufficiently religious.

The other argument that Defendant offers is that Plaintiff's request for an accommodation was not religious in nature. The District Court, incidentally, found that Plaintiff's request was sufficiently religious to avoid summary judgment. Specifically, noted this Court's decision in Kluge, *supra.* That decision noted that "that courts should avoid putting themselves in the impossible position of trying to define religious legitimacy and viewpoint sufficiency." See also Bube v. Aspirus Hosp., Inc., 108 F.4th 1017, 1020 (7th Cir. 2024).

The citation to Kluge is particularly instructive. That decision notes that "Employees carry a low burden to establish that they truly hold certain beliefs. A plaintiff must show only that '(1) the belief for which protection is sought is religious in the person's own scheme of things' and (2) that it is `sincerely held.'" Kluge, 150 F.4th at 811. Title VII does not require perfect consistency in observance or practice when deciding whether a person's belief is sincere. Indeed, a religious adherent can be sincere even if not scrupulous in his observance." *Id.* The Response attempts to cast doubt upon Plaintiff's sincerity by pointing out that she has incomplete knowledge about how medicines utilize aborted fetal lines in testing, and by noting that leaders within her religion were not opposed to vaccination.

As for the first of those objections, Kluge makes quick work of it. Complete knowledge is not a prerequisite to sincerity any more than complete consistency is not a prerequisite to sincerity. As for the second of those objections, a practice may be religious even if no pastor signs off on it. See also Koger v. Bryan, 523 F.3d 789, 799 (7th Cir., 2008). Title VII does not require an employee's view of her own religion to be correct in the eyes of church hierarchy.

An objection to abortions has been recognized as a *bona fide* religious basis for requests for an accommodation in American courts multiple times specifically in the context of COVID-19 vaccinations. In U.S. Navy Seals 1-26 v. Joseph R. Biden, Jr., 27 F.4th 336 (5th Cir., 2022), a court found (with little discussion) that "Plaintiffs have thoughtfully articulated their sincere religious objections to taking the vaccine itself." *Id.* at 350. Earlier, it had identified those bases as "inter alia, the vaccines' ties to aborted fetal cell lines." *Id.* at 342, Fn. 4. Similarly, in Keene v. City and County of San Francisco, 22-16567, (9 Cir., May 15, 2023), the Court found that the vaccines are indeed derived from aborted fetal cell lines. It then characterized the District Court's error (in finding against the plaintiff), as a "a misunderstanding of Title VII law. A religious belief need not be consistent or rational to be protected under Title VII, and an assertion of a sincere religious belief is generally accepted." *Id.* citing Thomas v. Review Bd., 450 U.S. 707, 714 (1981). Hon. Matthew H. Kennelly, in this District, found (in the RFRA context) that concerns with the development of the COVID-19 vaccines using fetal tissue lines was a bona fide religious concern in McCormack v. Chicago Transit Authority, 23 C 1998 (N.D., Ill.,

August 30, 2023). Similarly, Hon. John Robert Blakey, citing Baumgartner v. City of Chicago, 759 F.Supp.3d 688 (N.D. Ill, 2024), noted that objections to COVID-19 vaccinations on the grounds that they were developed using abortion-derived cell lines were certainly religious in nature. Saklski v. City of Chicago, 23-15360 (N.D. Ill, March 27, 2026), citing Baumgartner, 859 F.Supp.3d at 873.

As Passerella instructed "Perhaps above all else, then, one guidepost is clear: 'courts should not undertake to dissect religious beliefs ... because [they] are not articulated with the clarity and precision that a more sophisticated person might employ.'" Passarella v. Aspirus, Inc., 108 F.4th 1005, 1011 (7th Cir., 2024), citing Thomas v. Review Board of the Indiana Emp. Sec. Div., 450 U.S. 707, 715 (1981). The court does not concern itself with the truth or validity of religious belief, nor does it matter whether the belief is part of a mainstream religion or an idiosyncratic one. *Id.* citing Adeyeye, 721 F.3d at 451. "The validity of what [a plaintiff] believes cannot be questioned. Some theologians, and indeed some examiners, might be tempted to question ... the truth of his concepts. But these inquiries are foreclosed to Government" Adeyeye, 721 F.3d at 448.

Based on the summary judgment standard, if there is evidence that a jury could rely upon to suggest that Plaintiff was sincere, that is enough to overcome the sincerity prong of the test. There is evidence in spades, not the least of which is that Plaintiff was willing to lose her job over her religious beliefs. Adeyeye, 721 F.3d at 454 ("a jury may very well find it relevant evidence of sincerity that Adeyeye was willing to risk his job"). At trial, Defendant can point to what they consider to be her

secular concerns about the vaccine (Flores noted that it is new, for example) as evidence that those are the *real* reasons for her request for an accommodation. But at the summary judgment stage, there is more than sufficient evidence of her sincerity.

The District Court therefore properly found that summary judgment on this basis was not proper.

## III. Conclusion.

There is a sense in addressing these claims that the lawmakers who wrote Title VII never contemplated its protections would be so eroded that an undue hardship could be found where the requested accommodation made no impact on the employer's bottom line. Even Groff, which was decided during the pandemic, approaches the concept of an undue hardship from a purely economic standpoint. Decisions that deal with not-for-profit and government institutions (like Kluge), still require some connection between the role of the employer and the undue hardship. The closest the County comes to arguing this is that it operates a hospital, and therefore obviously vaccination is preferable. But that reasoning cannot withstand scrutiny in the light most favorable to Plaintiff, given that a.) it enforced its own policy inconsistently, and b.) the patients themselves were not required to be vaccinated. Defendant's argument, that patients waiting in line with unvaccinated fellow patients, had to be safe in the knowledge that the employee behind a glass partition at the end of the line was vaccinated, makes no sense. Its argument that fellow employees needed protection from Plaintiff does not cite the opinion of any

coworkers, all of whom had been working with Plaintiff before they were vaccinated for the 1.5 years before Plaintiff was placed on no-pay status.

While it is certainly possible that a jury will accept these explanations, it was error to deny Plaintiff the ability to make her case before a jury.

WHEREFORE, Plaintiff requests that this Honorable Court reverse the District Court's decision and remand this matter with instructions to set the matter for trial.

Respectfully Submitted,

s/Jonathan Lubin

Attorney for Plaintiffs

Jonathan Lubin
8800 Bronx Ave.
Suite 100H
Skokie, IL 60077
773 954 2608
jonathan@lubinlegal.com

## Certificate of Service

I, Jonathan Lubin, hereby certify that I caused a copy of this instrument to be served upon all parties of record by filing it with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit, on May 1, 2025.

s/Jonathan Lubin

## Certificate of Compliance with Federal Rules of Appellate Procedure Rule 32(a)(7) and Circuit Rule 32(c)

I, Jonathan Lubin, hereby certify that Plaintiff-Appellant's brief contains fewer than 7,000 words, including footnotes, in accordance with Circuit Rule 32(c).

s/Jonathan Lubin

## Certificate of Compliance Pursuant to Circuit Rule 30(a) and 30(b)

I, Jonathan Lubin, hereby certify that I have included all of the materials in this Short Appendix that are required by the Federal Rules of Appellate Procedure § 30, and Circuit Rule 30(a) and 30(b).

s/Jonathan Lubin